UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DERRICK WILLIAMS, 00-A-6019,

                                        Plaintiff,

-vs-

DOCTOR BENTIVEGNA, REGISTERED NURSE C.
McKERREN, REGISTERED NURSE PEARSON,
REGISTERED NURSE BURKE, REGISTERED
NURSE T. WALSH, DOCTOR JACQUELINE
LEVITT, REGISTERED NURSE JANE DOE, and
NURSE PRACTITIONER SCOTT D. LEUTHE,

                                        Defendants.
_____

DECISION AND ORDER

14-CV-6105-CJS

**APPEARANCES**

For Plaintiff:                    Derrick Williams *pro se*
                                      DIN 00-A-6019
                                      Wende Correctional Facility
                                      Post Office Box 1187
                                      Alden, NY 14004-1187

For Defendants:               Gary M. Levine, A.A.G.
                                      New York State Office of the Attorney
                                      General
                                      144 Exchange Boulevard, Suite 200
                                      Rochester, NY 14614

**INTRODUCTION**

**Siragusa, J.** Plaintiff Derrick Williams ("Williams"), an inmate at Greenhaven and Wende Correctional Facilities in New York State, alleges constitutional claims of denial of medical care against Dr. Robert Bentivegna (First Claim); Scott D. Leuthe, N.P.

(Second Claim); Cheryl A. McKerrow, R.N. (Third Claim); Deborah Pearson, R.N. (Fourth Claim); Nurse Burke[1] (Fifth Claim), Jacqueline Levitt, M.D. (Seventh and Eighth Claims); and various Jane Does (Sixth Claim). Now before the Court is Defendants' motion for summary judgment. For the reasons stated below, the application is granted.

## FACTUAL BACKGROUND

Western District of New York local rule of civil procedure 56 provides in pertinent part as follows:

> (1) **Movant's Statement.** Upon any motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, there shall be annexed to the notice of motion a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.
>
> (2) **Opposing Statement.** The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried. Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.
>
> (3) **Citations.** Each statement by the movant or opponent pursuant to this Local Rule must be followed by citation to evidence that would be admissible, as required by Federal Rule of Civil Procedure 56(e). Citations shall identify with specificity the relevant page and paragraph or line number of the authority cited.

In addition, the local rule provides that every *pro se* litigant must receive a notice concerning motions made under Federal Rule of Civil Procedure 56. In this case, Williams

---

[1] Nurse Burke is not further identified. Service was acknowledged by counsel, who provided only the defendant's last name. Further, in his Notice of Appearance, Nurse Burke was not listed among those represented by counsel for Defendants. Nevertheless, it appears that Counsel for the Defendants did mean to represent all named defendants, including Nurse Burke.

was served with the following notice in compliance with the local rule:

**IMPORTANT NOTICE TO PRO SE LIDGANTS**

**RULE 56 MOTIONS FOR SUMMARY JUDGMENT**

This Notice is to advise you that a party in your lawsuit has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which means that summary judgment will be granted if the Court finds that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**Failure to Respond to This Motion For Summary Judgment May Result in The Grant of Judgment in Favor of The Party Seeking Summary Judgment and The Dismissal of All or Part of The Case.**

**Opposing Affidavits and Exhibits**

Therefore, if the motion seeks summary judgment against you, you MUST submit opposing papers in the form of one or more affidavits (or affirmations) made upon the personal knowledge of the person signing each affidavit. Each affidavit must set forth admissible facts and must show that the person submitting that affidavit is competent to testify as to the matters stated therein (because he or she has personal knowledge of the facts set forth in the affidavit). If you wish to submit exhibits in opposition to the motion, you may attach to the affidavit (or submit separately) sworn or certified copies or all papers or parts thereof which are referred to in an affidavit.

**Statement of Material Facts Requiring a Trial**

You MUST also submit a separate, short, and concise statement of the material facts as to which you contend there exists a genuine issue which must be tried *See* Rule 56 of the Local Rules of Civil Procedure (available on the Western District web site at www.nywd.uscourts.gov). Note that all of the material facts which have been set forth in the statement served on you by the moving party (which that party claims are material facts about which there is a genuine issue to be tried) <u>will be deemed to have been admitted by you unless you controvert the facts in your statement of material facts presenting a genuine issue requiring a trial</u>.

**Memorandum of Law**

You MUST also submit a separate answering memorandum of law, Local Rule 7.1(e), which may not exceed 25 pages in length without prior approval of the Court, Local Rule 7.1(f). Failure to comply may result in the motion being decided against the non-complying party.

Notice to Pro Se Litigant Opposing Motion for Summary Judgment, Jul. 2, 2014, ECF No. 10-2.

In compliance with the local rules, Defendants submitted the following statement of facts:

1. In 2012, while an inmate at Greenhaven Correctional Facility, plaintiff began to have right knee pain (complaint par. 1).

2. On February 26, 2013, plaintiff was seen by Dr. Bentivenga for complaints of right knee pain (Bentivenga declaration).

3. Dr. Bentivenga was unable to elicit what particular motion of the knee was painful and noted that plaintiff had probable degenerative joint disease (arthritis). The doctor ordered a knee x-ray (Bentivenga declaration).

4. According to the medical records plaintiff indicated to Dr. Bentivenga that he already had a non-steroidal anti-inflammatory drug (NSAID) (Bentivenga declaration).

5. On March 23, 2013, an x-ray of plaintiff's right knee was completed - the exam showed no fracture, dislocation or arthritic change but an inferior patellar spur was seen (Bentivenga declaration).

6. A patellar spur is a projecting body situated below the patella, commonly known as the "knee cap." Inferior refers to the location within the anatomy, that is, it is closer to the feet than in an upright body (Bentivenga declaration).

7. On April 5, 2013, Dr. Bentivenga saw plaintiff and examined his right knee. The knee was stable and there was some crepitus (grating, crackling or popping sounds) with movement. The patella was deformed and tender (Bentivenga declaration).

8. The x-rays indicated a patellar enthesopthy (patellar enthesopthy is the same thing as a patellar spur) but no degenerative disk disease (Bentivenga declaration).

9. Dr. Bentevenga ordered a patellar cut out sleeve for support and a Lidoderm patch to be applied to the affected area QAM (each morning) for pain. A Lidoderm patch is an adhesive material containing 5% lidocaine which is used to reduce pain (Bentivenga declaration).

10. On or about April 12, 2013, plaintiff left Greenhaven with indications for the Lidoderm patch and Naprosyn (Bentivenga declaration).

11. On or about April 19, 2013, plaintiff arrived at Wende Correctional Facility with noted medications of Lidoderm patch and Naprosyn (Bentivenga declaration).

12. On May 2, 2013, at Wende Correctional Facility, plaintiff advised N.P. Leuthe that a knee brace was ordered at Greenhaven but Leuthe did not make such a note in the medical record (complaint par. 8).

13. N.P. Leuthe directed that plaintiff live on the ground floor (flats) and to have a bottom bunk (complaint par. 8).

14. On June 24, 2013, plaintiff was seen by Nurse McKerrow[2] about his knee but was not given anything for the pain and the nurse wrote that plaintiff refused Motrin (complaint par. 9).

15. On June 27, 2013, plaintiff was seen by Nurse Pearson about his knee but was not given anything for the pain but the nurse scheduled plaintiff to see a provider (physician) (complaint par. 10).

16. On July 8, 2013, plaintiff was seen by Nurse Burke about his knee but was not given anything for the pain but the nurse advised plaintiff that he was scheduled to see a provider (complaint par. 12).

17. On July 18, 2013, plaintiff was seen by Dr. Levitt who took a history about plaintiff's knee and wrote that plaintiff did not want pain medication (complaint par. 14).

18. On October 17, 2013, plaintiff was again seen by Dr. Levitt who ordered new x-rays and physical therapy but did not order medication (complaint par. 17).

19. On November 13, 2013, the new x-rays were taken and again showed inferior patellar spur (complaint par. 19).

20. On January 21, 2014, plaintiff was again seen by Dr. Levitt about his knee who gave plaintiff an elastic knee brace which was ineffective and prescribed Tylenol which was never received (complaint par. 24-25).

21. On April 21, 2014, Dr. Levitt met with plaintiff: he advised that he did not have knee pain, plaintiff stated was doing better, the ace wrap was helping and the doctor did not observe any problems with plaintiff's walking (Levitt declaration).

22. Both doctors' medical opinions did not believe plaintiff required stronger medications because plaintiff's symptoms did not warrant additional medications.

---

[2] Plaintiff refers to the Nurse by the name: McKerren.

23. Both doctors' medical opinions did not believe plaintiff required the care of a specialist, such as an orthopedic surgeon nor did not think a MRI was necessary under plaintiff's circumstances.

Def.s' Rule 56 Statement, Jul. 2, 2014, ECF No. 10-1.

Williams filed two responses, both of which appear to be identical. Statement of Material Facts Requiring a Trial Pursuant [sic] Rule 56, Aug. 18, 2014, ECF No. 16; and Statement of Material Facts Requiring a Trial Pursuant [sic] Rule 56, Aug. 18, 2014, ECF No. 17. Williams' response does not specifically address Defendants' statement, leaving it to the Court to parse each document for disagreements. This extra workload on the Court is precisely what the local rule was designed to eliminate.

As an example of the disconnect between Defendants' Statement of Fact and the ones submitted by Williams, in the first paragraph of Williams' response, he states, in contradiction to Defendants' Statement, that Dr. Bentivegna gave him nothing for the pain in his knee, referring to Exhibit 2A. Pl.'s Statement ¶ 1, ECF No. 17. Later in his Statement, Williams identifies the exhibits as those attached to his complaint. Exhibit 2A of his complaint specifically contradicts what Williams wrote in his Statement. Exhibit 2A shows that Dr. Bentivegna, on April 5, 2013, the date Williams listed in his statement, gave him a Lidoderm patch for pain. Compl. Ex. 2A, Mar. 4, 2014, ECF No. 1.

In his second paragraph, Williams does not address Defendants' statement, but adds an additional fact concerning his transfer from Greenhaven Correctional Facility in violation of "The Milburn Decree," referring to Exhibit 3B. In his fourth paragraph, Williams contradicts what he stated in his first paragraph, and specifically acknowledges that the doctor ordered a Lidoderm patch for his pain. Pl.'s Statement ¶ 4. In his sixth paragraph, Williams claims that Nurse "McKerrow" falsified his medical record and that

he did not refuse Motrin. However, he cites to no evidentiary proof in admissible form in support of his contention.

In the seventh paragraph, Williams argues that it makes no sense that Dr. Levitt, on July 18, 2013, wrote in his medical record that he did not want any pain medication when he went to her because of knee pain. Pl.'s Statement ¶ 6. On the same topic of the July 18 visit, Defendants' statement, citing to the complaint's paragraph 14, states simply that Dr. Levitt wrote that Williams did not want pain medication. Def.s' Statement ¶ 17. The complaint, at paragraph 14, states:

> 14. On [J]uly 18, 2013, I met with Doctor Levitt about the pain in my right knee. The only thing Doctor Levitt did was to write down the history of my right knee and she lied and stated that I said I don't want pain meds. I immediately challenged that false information. (See Exhibit 7-A)

Compl. ¶ 14. Exhibit 7A does have a handwritten note over an illegible signature: "does not want pain med!" However, Exhibit 7A does not contain any challenge to that statement. Therefore, if Williams did challenge the statement that he did not want pain medication, it does not appear at the exhibit he referenced in his complaint, and he cites to no evidence in his statement of facts.

In paragraph 10 of his Statement, Williams contradicts paragraph 21 of Defendants' Statement, concerning an April 21, 2014, visit, by stating that he did not tell Dr. Levitt that he did not have knee pain, or that the ace wrap was helping, or that his knee was doing better. Pl.'s Statement ¶ 10. However, Williams does not cite any evidentiary proof in admissible form in support of his contentions. In paragraph 11 of his Statement, Williams contradicts the conclusion of the doctors that no stronger medication was necessary since "they never gave plaintiff any pain medication at all." Pl.'s Statement ¶ 11.

7

## STANDARDS OF LAW

*Summary Judgment*

Summary judgment may not be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the non-moving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert. denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by

producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1)(B). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

### *Constitutional Claims*

Williams' claims are brought pursuant to 42 U.S.C. § 1983. In order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993).

Here, Williams claims that Defendants exhibited a deliberate indifference to his serious medical needs.

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L.Ed.2d 251 (1976). The standard of deliberate indifference includes both subjective and objective components. "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.* An official acts with the requisite deliberate indifference when that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

*Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). The Court is aware if the requirement in this Circuit to "construe pro se pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.' *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)) (internal quotation marks omitted)." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).

## ANALYSIS

Williams has failed to show that Defendants were deliberately indifferent to his serious medical need. First, on the objective element, Williams has not shown that his bone spur constituted a serious medical condition. As the Court of Appeals observed,

> The "serious medical need" requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain. *See Archer v. Dutcher,* 733 F.2d 14, 16–17 (2d Cir. 1984) ("extreme pain"); *Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir. 1977) ("physical torture and lingering death"). The types of conditions which have been held to meet the constitutional standard of serious medical need include a brain tumor, *Neitzke,* 109 S. Ct. 1827; broken pins in a hip, *Hathaway v. Coughlin,* 841 F.2d 48 (2d Cir. 1988); premature return to prison after surgery, *Kelsey v. Ewing,* 652 F.2d 4 (8th Cir. 1981); diabetes requiring special diet, *Johnson v. Harris,* 479 F. Supp. 333 (S.D.N.Y.1979); a bleeding ulcer, *Massey v. Hutto,* 545 F.2d 45 (8th Cir.1976); and loss of an ear, *Williams v. Vincent,* 508 F.2d 541 (2d Cir.1974) (claim stated against a doctor who threw away a prisoner's ear and stitched up the stump).

*Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990). The Court of Appeals, in reviewing a case involving a bone spur, held that the plaintiff's condition, "which medical staff at various stages of his treatment diagnosed as a sprained ankle, a bone spur, and a neuroma, did not rise to the level of seriousness that the Eighth Amendment requires." *Chatin v. Artuz*, 28 F. App'x 9, 10–11 (2d Cir. 2001). Therefore, as a matter of law, Williams has not shown that he suffered from an objectively serious medical condition.

Turning to the subjective factor, Williams did receive treatment for his medical condition. The doctors and nurses were not indifferent to his complaints, and although

the treatment was conservative, it did address his knee issue. Unlike the situation in *Williams v. Vincent*, 508 F.2d 541 (2nd Cir. 1974), the medical decision to treat his bone spur conservatively did not amount to deliberate indifference:

> In certain instances, a physician may be deliberately indifferent if he or she consciously chooses "an easier and less efficacious" treatment plan. *Williams v. Vincent,* 508 F.2d 541, 544 (2d Cir. 1974); *see also Waldrop v. Evans,* 871 F.2d 1030, 1035 (11th Cir. 1989) (reaffirming position that "choice of an easier but less efficacious course of treatment can constitute deliberate indifference"). In *Williams,* for example, the plaintiff alleged that the prison doctors chose simply to close a wound caused by the severing of his ear rather than attempting to reattach the organ. We held that this form of treatment could constitute deliberate indifference rather than a mere difference of opinion over a matter of medical judgment.

*Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Further, Williams' complaints that prescribed medication was not provided to him, or that the doctors wrote false information in his medical record, might amount to malpractice, but not a constitutional violation. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim."). Williams provides no evidentiary proof in admissible form that the medical staff that saw him possessed the requisite state of mind. "The subjective element requires a state of mind that is the equivalent of criminal recklessness. . . ." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court described the requisite state of mind, writing that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. 825, 837. No evidence presented on this motion shows that any of the defendants here possessed the state of mind contemplated by *Farmer* or *Hathaway*.

11

Further, false entries in an inmate's medical record do not rise to the level of a constitutional violation. *Diaz v. Goord*, No. 04-CV-6094 CJS(P), 2006 U.S. Dist. LEXIS 14309, *20 (W.D.N.Y. Mar. 20, 2006).

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment, ECF No. 10, is granted. The Clerk is directed to enter judgment for Defendants and close this case.

DATED:	January 12, 2015
		Rochester, New York

<u>/s/ Charles J. Siragusa</u>
CHARLES J. SIRAGUSA
United States District Judge